William M. MITCHELL, Sr. et al *v.*
William M. MITCHELL, Jr. et al

77-371                                        565 S.W. 2d 29

Opinion delivered May 1, 1978
(In Banc)

*Loh & Massey, Ltd.,* by: *Edmund Massey,* and *Joe Cambiano, P.A.,* for appellants.

*Robert E. Irwin,* for appellees.

CONLEY BYRD, Justice. This litigation arises out of the will of E. E. Mitchell, Sr. who was survived by four sons: E. E. Mitchell, Jr., Shelby H. Mitchell, James C. Mitchell and William M. Mitchell, Sr. In *Mitchell* v. *Mitchell,* 208 Ark. 478, 187 S.W. 2d 163 (1945), we construed item XVIII of the Will as creating a fee tail estate in the four sons. Two of the brothers, E. E. Mitchell, Jr. and Shelby H. Mitchell died in 1974 without bodily heirs and the question arose as to the rights of the two surviving brothers to the use and control of the lands formerly controlled by the two deceased brothers.

The will after setting up a ten year trust to control the lands, here involved, following the testator's death, provided:

"ITEM 18. At the expiration of ten years being the expiration of the trust period herein, the trust herein shall cease and I will that all my property of every kind, real, personal or mixed and wherever located and then belonging to my estate shall vest in my children herein named who may at that time be living and who shall not have attempted to dispose of or alienate their expectancy in said estate, for and during their natural lives and at their death to go to their bodily heirs; and to and in the legal bodily issue of any who shall have died, each taking in the same proportion as he or she would take and I lived until the time and died intestate. And I will that the personal property be delivered to the said children or their descendants deeding to them jointly all the lands herein reserved together with any other lands which may remain unsold at the time, it being my will that said children share equally in the personal property and real estate remaining in the hands of my said trustees at the termination, of this trust."

The trial court ruled that the will created four fee tails in

common in the lands involved with a contingent remainder in the bodily heirs, if any, of each of the four brothers and a reversion in the testator should any of the four tenants in common die without issue.

The only question before this Court on this appeal is stated by appellants as follows:

"Did this Court, in the former appeal hold that one estate tail or four estate tails were created by the Will of E. E. Mitchell, Sr., deceased?

If the former appeal held that the Will created four estate tails, then the Chancellor's decision is correct, and should be upheld; however, if only one estate tail was created, the Chancellor's decision is incorrect and must be reversed."

In *Mitchell* v. *Mitchell, supra,* after quoting from item # 4 of the will, which disposed of testator's "stock and interest in E. E. Mitchell Company," the issues before the court were stated in this language, to-wit:

This, say appellants Emmett, James, and Shelby Mitchell, being a specific bequest, and the subject matter having been evidenced by corporation stock subsequently cancelled, the legacy lapsed — or, as is sometimes said, there was an ademption.

The decedent owned valuable farm lands in Conway County and elsewhere. Contention, other than that relating to *Item* IV, is that if the will be correctly construed a fee simple title vests in the four devisees with expiration of the trust period. *Items* XVI, XVII, and XVIII are copied in the margin."

After ruling that the dissolution of E. E. Mitchell Company did not amount to an ademption under item # 4 of the will, we then took up the question of whether items 16, 17 and 18 vested fee simple title in the devisees after the expiration of the trust. The late Chief Justice Griffin Smith, who wrote the opinion for the Court, after pointing out that the will was not

controlled by *Hardage v. Stroope,* 58 Ark. 303, 24 S.W. 490 (1893), then concluded:

> "Our conclusion is that in the case at bar an estate tail was created: and this being a life estate, (Pope's Digest, § 1799) passes the fee to the bodily heirs of the life tenants by operation of the will and not by descent. Not as to the personal property, which vests with delivery."

As can be seen by the foregoing resume and quotes from *Mitchell v. Mitchell, supra,* it is obvious that the issues now raised were not before us in the previous appeal, and there was no reason for this Court to decide the issue now raised.[1]

The trial court's ruling is correct because of Ark. Stat. Ann. § 50-411 (Repl. 1971), which provides:

> "Every interest in real estate, granted or devised to two [2] or more persons (other than executors and trustees as such), shall be in tenancy in common, unless expressly declared in such grant or devise to be a joint tenancy."

In construing this statute in *Cockrill v. Armstrong,* 31 Ark. 580 (1876), we stated:

> "There can be no question as to the intention of this enactment, and under it we must hold: That it is only where the grant is to executors or trustees, as such, or where by the terms of the grant or devise, a joint tenancy is devised, that a joint tenancy can exist. It is, therefore, not sufficient that an estate be granted or devised to several persons to make them joint tenants. The deed or devise must declare that they are such, in order to bring the parties within the common law rule upon the subject of joint tenancy."

Thus in Arkansas there is a clear distinction between a tenancy in common and a joint tenancy. As pointed out in *Ferrell, Adm'x. v. Holland,* 205 Ark. 523, 169 S.W. 2d 643

---

[1]The issues argued in the brief in *Mitchell v. Mitchell, supra* were: (a) Item # 4 constituted a specific legacy, and (b) do items 16, 17 and 18 vest fee simple title in devisees after the expiration of the trust?

(1943), the ". . . statute does not prohibit a joint tenancy: it merely provides for a construction against joint tenancy if the intention to create it is not clear." Needless to say the intention to create a joint tenancy in item # 18 of the will, *supra*, is not clear. When we look at the other proposition that the statute provides for a construction against a joint tenancy, the trial court had no choice other than the construction placed upon item # 18, *supra*. When addressing himself to those who should take in the event of the death of one of the sons, the testator stated: ". . . and to and in the bodily issue of any who shall have died, each taking in the same proportion as he or she would take and I lived until the time and died intestate."

Furthermore, the trial court's construction of item # 18, *supra*, is in accordance with the construction given to such terms by the courts in general. In *Dill* v. *Deavors*, Ky., 266 S.W. 2d 788 (1954), we find this statement:

> "It appears to be the prevailing rule that where land is conveyed or devised to several persons for life and at 'their death' to 'their children' or bodily heirs, the phrase 'their death' will be read 'their respective deaths' and the phrase 'their children' or 'their bodily heirs' will be read 'their respective children' or 'their respective bodily heirs.' "

Having established that the issue now raised was not before this Court in *Mitchell* v. *Mitchell*, *supra*, and that the trial court's construction is in accordance with the statutory authority of this State and the case law in general, it follows that the judgment must be affirmed.

Affirmed.